**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x
In re:

       203 W 107 Street LLC, *et al.*,[1]

              Debtors.

-------------------------------------------------------- x
203 W 107 Street LLC, *et al.*,

             Plaintiffs

v.

Kellner Herlihy Getty & Friedman LLP, Julia Quintana, Jeffrey Dobbs, John O'Grady, Teresa Richards, Jhona Huntington, Avra Matsoukas, Philip Feil, Kelly Irwin, Hana Marritz, Leslie Goff, Katherine Marcus, Irma Laguerre, Uday Dhar, Barbra Friedland, Josiah Gluck, Suzzan Craig, Susan Graham, Ronald Saleh, Wilawn Saleh, Barbra Swing, George Rubey, Joshua Raskin, Karen Elizabeth Dugan Raskin, Nancy Lange, Kathryn Frey, Jim Rush, Nora Valencia, Patricia Tompkins, Boylston Tompkins, Anna Smith, Amanda Levine, Andrew Goltz, Carole Rosen, Francis Potash, George Schirmann, Angela Pistilli, Diane Zinn, Beverley Shenkman, Douglas Bellito, Marlaine Wade, Gerard Caraccioli, Kelly Burchill, Joseph Vattakkaven, Marie Grace, David Johnston, Danilo Costa, Peter Wargo, Margaret Wargo, Jill Cooper, Rena Miller Devenza, Sally Wilfert, Roger Howell, Daniel Leaf, Erica Ackerberg, Robert Bird, Howard Stoodard, Margaret Daly, Jose Alfonso, Luz Laureano, Alyssa Goodpaster, Kathryn Goodpaster, Hira Ismail, Mark Mravic, Kidest Fikremariam, Ron Peralta, Molly Russo, Nobuhiro Arai, Joanna Barrett, Ann Gollin, Skye

Chapter 11
Case No. 20-12960 (LGB)
Jointly Administered


Adv. Proc. No. 22-_____ (___)

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 203 W 107 Street LLC (8429), 210 W 107 Street LLC (3364), 220 W 107 Street LLC (0461), 230 W 107 Street LLC (3686), 124-136 East 117 LLC (6631), 215 East 117 LLC (6961), 231 East 117 LLC (0105), 235 East 117 LLC (8762), 244 East 117 LLC (1142), East 117 Realty LLC (1721) and 1661 PA Realty LLC (5280).

Morgan, Arthur Noguera, Francis Allarey, Mark
Setlock, Kira Arnold, John DeFrance, Joyce
Culver, Jessica Grey, Christopher Tillotson, and
John or Jane Does 1-10,

                                    Defendants.

---------------------------------------------------------- x

## COMPLAINT FOR TURNOVER, CONTEMPT FOR STAY VIOLATIONS, DECLARATORY RELIEF, ACCOUNTING, AND OTHER RELATED RELIEF

Plaintiffs, the debtors and debtors-in-possession, (each, a "Debtor" and collectively, the

"Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") and the plaintiffs

(the "Plaintiffs") in the above-captioned adversary proceeding (the "Adversary Proceeding"), as

and for their complaint   (the "Complaint") against defendants (i) Kellner Herlihy Getty &

Friedman LLP ("KHGF"), (ii) Julia Quintana, Jeffrey Dobbs, John O'Grady, Teresa Richards,

Jhona Huntington, Avra Matsoukas, Philip Feil, Kelly Irwin, Hana Marritz, Leslie Goff, Katherine

Marcus, Irma Laguerre, Uday Dhar, Barbra Friedland, Josiah Gluck, Suzzan Craig, Susan Graham,

Ronald Saleh, Wilawn Saleh, Barbra Swing, George Rubey, Joshua Raskin, Karen Elizabeth

Dugan Raskin, Nancy Lange, Kathryn Frey, Jim Rush, Nora Valencia, Patricia Tompkins,

Boylston Tompkins, Anna Smith, Amanda Levine, Andrew Goltz, Carole Rosen, Francis Potash,

George Schirmann, Angela Pistilli, Diane Zinn, Beverley Shenkman, Douglas Bellito, Marlaine

Wade, Gerard Caraccioli, Kelly Burchill, Joseph Vattakkaven, Marie Grace, David Johnston,

Danilo Costa, Peter Wargo, Margaret Wargo, Jill Cooper, Rena Miller Devenza, Sally Wilfert,

Roger Howell, Daniel Leaf, Erica Ackerberg, Robert Bird, Howard Stoodard, Margaret Daly, Jose

Alfonso, and Luz Laureano (collectively, the "Current Tenants"), (iii) Alyssa Goodpaster, Kathryn

Goodpaster, Hira Ismail, Mark Mravic, Kidest Fikremariam, Ron Peralta, Molly Russo, Nobuhiro

2

Arai, Joanna Barrett, Ann Gollin, Skye Morgan, Arthur Noguera, Francis Allarey, Mark Setlock,

Kira Arnold, John DeFrance, Joyce Culver, Jessica Grey, and Christopher Tillotson (collectively,

the "Former Tenants," together with the Current Tenants, the "Tenants"), and (iv) John or Jane

Does 1-10 (collectively, the "John or Jane Doe Defendants," together with KHGF, the Current

Tenants, and the Former Tenants, the "Defendants") allege upon knowledge of their own and upon

information and belief as to other matters as follows:

## PRELIMINARY STATEMENT[2]

1.      On December 28, 2020 (the "Petition Date"), each Debtor filed a voluntary petition

for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  As of

approximately the Petition Date, tenants occupying approximately thirty-one (31) apartments

represented by KHGF were engaged in a rent strike at three (3) of the 107th Street Properties (210

West 107th Street, 220 West 107th Street, and 230 West 107th Street).  After the Petition Date,

tenants occupying approximately twelve (12) additional apartments from these three 107th Street

Properties joined in the rent strike.   Additionally, tenants occupying approximately eighteen (18)

apartments at 203 West 107th Street commenced withholding rent beginning in February of 2021.

Upon information and belief, there are presently fifty-nine (59) Current Tenants, residing in forty-

eight (48) apartments, participating in the rent strike.[3]

---

[2] Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meanings ascribed to such terms below.

[3] If Former Tenants are included, at least sixty-two (62) apartments and eighty (80) Tenants have participated in the Rent Strike.

2.      Shortly after the Petition Date, the Debtors filed the Plan which reflects a negotiated resolution among the Debtors, LoanCore Capital, and other significant parties in interest of, among other things, LoanCore Capital's claims against the Debtors' estates and effects an orderly transfer of the Properties to the Successor Owners (as defined in the Plan), entities owned and controlled by LoanCore Capital.   Under the Plan, the Debtors are assuming the tenant leases at all of the Properties and assigning such leases to the Successor Owners.   The Successor Owners are assuming all obligations of the Debtors as landlord under the assigned tenant leases and will pay all cure costs[4] that may be due in connection with the assumption and assignment of such tenant leases.

3.      Immediately following the Petition Date, the Debtors installed new Property Managers at all of the Properties. As a result of the Property Managers' and the Debtors' dedicated efforts and with LoanCore Capital's support, the Debtors have dramatically improved property operations and the physical condition of the Properties by: (i) undertaking significant capital improvements at the Properties, e.g., installation of new trash compactors; (ii) making significant building wide repairs, e.g., roof repairs; and (iii) making significant in-unit repairs, all at a cost in excess of three million dollars, of which approximately $1.6 million was spent at the 107th Street Properties.  The Properties now operate efficiently and at appropriate standards for New York City

---

[4] The cure costs include: (i) claims for abatement of rent; (ii) claims for repairs or the remediation of conditions and violations; (iii) claims for the return of security deposits; and (iv) any other claims timely asserted by a tenant provided such claim arises under the applicable tenant lease, including any rent overcharge claims, solely to the extent such claims are agreed upon by the Successor Owners (as defined in the Plan) and the tenant or are allowed by the Court. *See infra* ¶ 42.

4

apartment buildings (and have for quite some time).  Tenants at the Properties have realized the benefits of the Debtors' and Property Manager's efforts.

4.      Despite the Debtors' immensely successful achievements in rehabilitating the Properties, Current Tenants represented by KHGF continue to participate unjustifiably and improperly in a rent strike (the "Rent Strike") by paying rent monies due and owing to the Debtors (the "Monthly Rents")[5] into certain bank accounts managed and owned by KHGF (the "KHGF Accounts").  These Monthly Rents are rightfully the property of the Debtors' estates, and such monies are being wrongfully diverted and withheld by the Tenants and KHGF in violation of Bankruptcy Code sections 362, 541, and 542.   Additionally, with blatant disregard for the Bankruptcy Code's automatic stay, KHGF (in its unfettered, unauthorized discretion) appears to have made improper, unauthorized distributions of estate property by disbursing the Debtors' rent monies, i.e., the Monthly Rents, to certain Former Tenants and to itself for purported legal fees.

5.      Accordingly, the Debtors request entry of judgment that, among other things, (a) compels KHGF to turnover Monthly Rents held in the KHGF Accounts to the Debtors, subject to and without prejudice to the rights and interests of the Tenants in such monies, (b) authorizes the Debtors to use up to fifty percent (50%) of the Monthly Rents collected through and including December 31, 2021 and one-hundred percent (100%) of the Monthly Rents collected from and after January 1, 2022 as cash collateral in accordance with the Cash Collateral Budget for the operation and improvement of the Properties, subject to a determination that the Tenants' interests

---

[5] For the avoidance of doubt, the Monthly Rents also include rent monies paid by Former Tenants into the KHGF Accounts that are also wrongfully being withheld from the Debtors.

are adequately protected, (c) compels KHGF to turnover the Improper Attorney Distributions (as

defined below) to the Debtors, subject to and without prejudice to the rights and interests of KHGF

in such monies, (d) compels Tenants to turnover the Improper Tenant Distributions (as defined

below) to the Debtors, subject to and without prejudice to the rights and interests of the Tenants in

such monies, (e) holds KHGF in contempt for its willful violations of the automatic stay imposed

pursuant to Bankruptcy Code section 362; (f) declares that the Rent Strike is improper and

unlawful as of a date no later than January 1, 2022 and that all rent obligations of the Tenants to

the Debtors are due and owing as of a date no later than January 1, 2022,[6] and (g) directs KHGF

to provide an immediate accounting of all Monthly Rents received from Tenants and disbursed

from the KHGF Accounts since the Rent Strike began.

## JURISDICTION AND VENUE

6.        This Adversary Proceeding arises in and relates to the Debtors' Chapter 11 Cases

pending before the United States Bankruptcy Court for the Southern District of New York (the

"Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The

Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended

Standing Order of Reference from the United States District Court for the Southern District of

New York, dated February 1, 2012 (Preska, C.J.).

7.        This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b), and,

pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

---

[6] The Debtors reserve the right to seek a determination that rent is due and owing by a Tenant from a date sooner than January 1, 2022 based on the conditions in such Tenant's unit and at the relevant Properties.

the Debtors consent to the entry of a final order by the Court in the event that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

8.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## **THE PARTIES**

9.      The Debtors are limited liability companies formed and organized under the laws of Delaware, registered in New York as foreign limited liability companies, with a business address at One Battery Park Plaza, New York, New York 10004.

(i)      *KHGF*

10.     KHGF is a limited liability partnership and law firm formed and organized under the laws of New York with a business address at 470 Park Avenue South, 7th Floor, New York, New York 10016.

(ii)      *Current Tenants*

11.     Julia Quintana, Jeffrey Dobbs, John O'Grady, Teresa Richards, Jhona Huntington, Avra Matsoukas, Philip Feil, Kelly Irwin, Hana Marritz, Leslie Goff, Katherine Marcus, Irma Laguerre, Uday Dhar, Barbra Friedland, Josiah Gluck, Suzzan Craig, Susan Graham, Ronald Saleh, Wilawn Saleh, Barbra Swing, and George Rubey are individuals allegedly residing or residing at 203 West 107th Street, New York, New York.

12.     Joshua Raskin, Karen Elizabeth Dugan Raskin, Nancy Lange, Kathryn Frey, Jim Rush, Nora Valencia, Patricia Tompkins, Boylston Tompkins, Roger Howell, and Anna Smith are individuals allegedly residing or residing at 210 West 107th Street, New York, New York.

7

13.    Daniel Leaf, Erica Ackerberg, Robert Bird, Howard Stoodard, Margaret Daly, Amanda Levine, Andrew Goltz, Carole Rosen, Francis Potash, George Schirmann, Angela Pistilli, and Diane Zinn are individuals allegedly residing or residing at 220 West 107th Street, New York, New York.

14.    Beverley Shenkman, Douglas Bellito, Marlaine Wade, Gerard Caraccioli, Kelly Burchill, Joseph Vattakkaven, Marie Grace, David Johnston, Danilo Costa, Peter Wargo, Margaret Wargo, Jill Cooper, Rena Miller Devenza, Sally Wilfert, Jose Alfonso, and Luz Laureano are individuals allegedly residing or residing at 230 West 107th Street, New York, New York.

*(iii)    Former Tenants*

15.    Alyssa Goodpaster, Kathryn Goodpaster, Hira Ismail, Mark Mravic, Kidest Fikremariam, Ron Peralta, Molly Russo, Nobuhiro Arai, Joanna Barrett, Ann Gollin, Skye Morgan, Arthur Noguera, Francis Allarey, Mark Setlock, Kira Arnold, John DeFrance, Joyce Culver, Jessica Grey, and Christopher Tillotson are individuals residing at 290 Paterson Plank Road #2, Jersey City, New Jersey, 4129 24th Street #8G, Long Island City, New York, 441 S. El Dorado, Mesa, Arizona, 103 Elm Street, Groton, Connecticut, 1224 Saint Nicholas Avenue, Apt. 6E, New York, New York,[7] 1508 W. Sitka Street, Tampa, Florida, 124 E. Conklin Avenue, Nedrow, New York, 601 W. 112th Street, Apt. 5C, New York, New York, 752 West End Avenue, Apt. 17K, New York, New York,[8] 33 Irving Place #8, New York, New York, 2417 Jefferson Ave, Berkley, California, 214 West 96th Street #5I, New York, New York, 245 Newark Ave #211,

---

[7] Ms. Fikremariam may also maintain an address at 953 Columbus Avenue, Apt. 5N, New York, New York.

[8] Ms. Barrett may also maintain an address at 12 Brookhaven Drive, Ithaca, New York.

Jersey City, New Jersey, 65 Nassau Street #7C, New York, New York, 230 Market Street, Apt. 6, Philadelphia, Pennsylvania,[9] 104 Dean St #3R, Brooklyn, New York, 40 Washington Avenue, Greenport, New York,[10] 433 East 83rd Street #1B, New York, New York, and 254 W. 103rd Street #254, New York, New York,[11] respectively.

    *(iv)*    *John or Jane Doe Defendants*

16.    John or Jane Does 1-10 are other, unknown Tenants that purportedly reside or resided at apartments in the Properties that may have participated in the Rent Strike and/or new, additional, unidentified Current Tenants that are presently participating in the Rent Strike or may participate in the future.

## **BACKGROUND**

**A.**    **The Debtors' Chapter 11 Cases**

17.    On the Petition Date, 203 W. 107 Street LLC, 210 W. 107 Street LLC, 220 W. 107 Street LLC, and 230 W. 107 Street LLC (the "107 Debtors"), and 124-136 East 117 LLC, 215 East 117 LLC, 231 East 117 LLC, 235 East 117 LLC, 244 East 117 LLC, East 117 Realty LLC, and 1661 PA Realty LLC (the "117 Debtors") each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

18.    The Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

---

[9] Ms. Arnold may also maintain an address at P.O. Box 1394, Fairfield, Connecticut, 159 Grasmere Avenue, Fairfield Connecticut, and 162 Pepper Street, Monroe, Connecticut.

[10] Ms. Culver may also maintain an address at 480 Washington Avenue, Greenport, New York.

[11] Mr. Tillotson may also maintain an address at 254 West 103rd Street #3, New York, New York.

19.    No committee has been appointed in the Chapter 11 Cases and no request for the appointment of a trustee or examiner has been made.

20.    The 107 Debtors own the properties at 203 West 107th Street, New York, New York; 210 West 107th Street, New York, New York; 220 West 107th Street, New York, New York; and 230 West 107th Street, New York, New York (collectively, the "107th Street Properties").  The 117 Debtors own the properties at 124-136 East 117th Street, New York, New York; 215 East 117th Street, New York, New York; 231 East 117th Street, New York, New York; 235 East 117th Street, New York, New York; 244 East 117th Street, New York, New York; 316, 322 and 326 East 117th Street, New York, New York; and 1661 Park Avenue New York, New York (collectively, the "117th Street Properties," with the 107th Street Properties, the "Properties").  The Current Tenants and Former Tenants purportedly reside and resided, respectively, at the 107th Street Properties.

21.    As of the Petition Date, the Properties were the subject of many violations issued by the New York City Department of Housing Preservation and Development ("HPD") including violations relating to heating and plumbing issues, leaks, and mold and pest control.

22.    On January 24, 2021, KHGF, as counsel to the Tenants, filed the *Verified Statement of the Ad Hoc Group of West 107th Street Tenants Pursuant to Bankruptcy Rule 2019* [ECF No. 29] wherein KHGF identified the individuals it represents in connection with these Chapter 11 Cases which include the Tenants and other tenants at the Properties.

23.    On January 27, 2021, the Court entered the *Final Order (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, and (C) Granting Related Relief* [ECF No.

31] (the "Cash Collateral Order"). The Cash Collateral Order and Third DIP Order (as defined below) authorize the Debtors to, among other things, use LoanCore Capital's cash collateral in accordance with the terms of the budget attached as Exhibit A to the Cash Collateral Order which was most recently amended by the budget attached as Exhibit B to the *Debtors' Motion for Entry of a Final Order Authorizing the Debtors to Incur Additional Postpetition Secured Debt and Granting Related Relief* [ECF No. 190].

24.    On January 28, 2021, counsel to the 124-136 East 117th Street Tenants' Association (the "Tenants' Association"), filed a notice of appearance in these Chapter 11 Cases.

25.    On April 16, 2021, the Court entered the *Order Approving (I) The Adequacy of the Fourth Amended Joint Disclosure Statement for the Fourth Amended Joint Plan of Liquidation of the Debtors; (II) Solicitation and Notice Procedures; (III) Form of Ballot and Notice in Connection Therewith; and (IV) Certain Dates with Respect Thereto* [ECF No. 69] (the "Disclosure Statement Order"). Among other things, the Disclosure Statement Order approved the adequacy of the information contained in the Debtors' *Fourth Amended Joint Disclosure Statement for the Fourth Amended Joint Plan of Liquidation of the Debtors* [ECF No. 68] (the "Disclosure Statement") in connection with the Debtors' solicitation of votes from creditors to accept the *Fourth Amended Joint Plan of Liquidation of the Debtors* [ECF No. 67] (the "Plan"). The Disclosure Statement provides a fulsome discussion of the events leading to the Debtors' commencement of these Chapter 11 Cases and the facts set forth therein are incorporated herein by reference.

26.     On August 2, 2021, January 26, 2022, and June 13, 2022, the Court entered the *Final Consent Order Authorizing Debtors to Incur Postpetition Secured Debt and Granting Related Relief* [ECF No. 106], *Final Order Authorizing Debtors to Incur Additional Postpetition Secured Debt and Granting Related Relief* [ECF No. 152], and *Final Order Authorizing Debtors to Incur Additional Postpetition Secured Debt and Granting Related Relief* [ECF No. 196] (the "Third DIP Order," and collectively, the "DIP Orders"), respectively.  Pursuant to the DIP Orders, the Court authorized the Debtor to borrow up to approximately $7.8 million from LoanCore Capital (the "Existing DIP Financing") to fund postpetition expenses incurred by the Debtors in connection with their operation and maintenance of the Properties and the prosecution of these Chapter 11 cases. Such postpetition expenses include, but are not limited to, ongoing maintenance at the Properties to improve living conditions for tenants and remedy HPD violations, funding operating deficits, other capital improvement costs, other major repair costs, taxes, and legal fees for the Debtors' professionals.

**B.     The Rent Strike**

*(i)     The Rent Strike's Impact on the Operation of the Properties*

27.     Typically, the term "rent strike" refers to the collective withholding of rent by tenants who seek, through their combined effort, to pressure an owner to provide remedial action, usually repair and services.  A rent strike does not mean non-payment of rent.  Tenants must continue holding the rent they would pay normally, usually either in a shared bank account with other tenants or with a lawyer in an escrow account.

28.     In February 2019, certain of the Tenants commenced the Rent Strike, based on prepetition conditions at the Properties, by withholding their rent payments.  Then, in July 2019, certain of the Tenants continued to withheld their rent payments and instead began paying amounts equal to their monthly rent, or a portion thereof, into the KHGF Accounts managed by KHGF.

29.     Despite the Tenants' continued Rent Strike and their refusal to pay rent to the Debtors, the Debtors have expended in excess of three million dollars, of which approximately $1.6 million was spent at the 107th Street Properties, to improve property operations, to remedy any deficiencies at the Properties, and to make capital improvements to the Properties, all of which have substantially benefited all current tenants (including the striking Current Tenants).  As a result, the Debtors' financial condition and wherewithal is stressed as is their ability to exit bankruptcy.  Further, LoanCore Capital's ability to obtain exit financing may be impeded. Resolution of these matters will help advance the Debtors' efforts in confirming and consummating the Plan.

### (ii)     *The Monthly Rents KHGF Holds in the KHGF Accounts*

30.     At various times prepetition and postpetition, KHGF provided the Debtors with accountings (each, an "Accounting" and collectively, the "Accountings") of the Monthly Rents held in the KHGF Accounts. Based on the Accountings, the chart below reflects the Monthly Rents held in the KHGF Accounts as of certain dates:

13

| As of Date | Monthly Rents Held in the KHGF Accounts from Tenants at 107th Street Properties Participating in the Rent Strike |
|---|---|
| January 21, 2020 | 203 W. 107th Street Tenants: $0<br>210 W. 107th Street Tenants: $40,361.51<br>220 W. 107th Street Tenants: $142,967.45<br>230 W. 107th Street Tenants: $99,867.68<br><br>**Total: $283,196.64** |
| June 19, 2020 | 203 W. 107th Street Tenants: $0<br>210 W. 107th Street Tenants: $67,605.24<br>220 W. 107th Street Tenants: $254,993.11<br>230 W. 107th Street Tenants: $195,909.13<br><br>**Total: $518,507.48** |
| May 11, 2021 | 203 W. 107th Street Tenants: $83,328.54<br>210 W. 107th Street Tenants: $187,829.45<br>220 W. 107th Street Tenants: $428,628.79<br>230 W. 107th Street Tenants: $404,944.79<br><br>**Total: $1,104,731.75** |
| November 11, 2021 | 203 W. 107th Street Tenants: $193,572.75<br>210 W. 107th Street Tenants: $218,019.53<br>220 W. 107th Street Tenants: $501,759.54<br>230 W. 107th Street Tenants: $464,248.91<br><br>**Total: $1,377,600.73** |
| June 9, 2022 | 203 W. 107th Street Tenants: $328,565.25<br>210 W. 107th Street Tenants: $260,085.91<br>220 W. 107th Street Tenants: $548,756.59<br>230 W. 107th Street Tenants: $567,919.51<br><br>**Total: $1,705,336.26** |

31.     At this time, KHGF has disclosed the approximate amount of funds presently held in the KHGF Accounts.  However, upon information and belief, KHGF has collected and disbursed further, additional rents which are not reflected in the Accountings.  None of the funds have been released to the Debtors, although some of those funds were unlawfully paid, without the Debtors' agreement or Court approval, to KHGF or to Former Tenants.  *See infra* ¶¶ 52-56.

32.     As of May 31, 2022, the Tenants are collectively in arrears to the Debtors in an amount not less than $2,083,267 for past due rents.

**C.     The Debtors' Successful Improvement Program at the Properties**

33.     In an effort to remove HPD violations and improve other property-level conditions, on January 4, 2021, the Debtors engaged Tri-Hill Management LLC ("Tri-Hill") as the property manager for the 107th Street Properties and Bronstein Properties LLC ("Bronstein," together with Tri-Hill, the "Property Managers") as the property manager for the 117th Street Properties. The management transition to the Property Managers was designed to, among other things, immediately improve management and maintenance at the Properties and to enhance the overall residential experience for existing and future tenants, including to address violations issued by HPD.

34.     Since their engagement, the Property Managers have taken significant management actions and resolved issues at the Properties. Among other things, the Property Managers have addressed:

      a.   In-Building Personnel: capable, responsible and focused in-building employees, including superintendents, porters and handymen, are critical for the successful operation of apartment buildings. The Property Managers took over operations at the Properties with 14 existing positions across the Properties. The Property

15

Managers evaluated all in-building employees and elected to re-staff 11 of the 14 total positions. This very significant change in staffing has substantially strengthened operations at the Properties;

b. <u>Service Providers and Outside Vendors</u>: reliable, high-quality vendors are critical to ensure that all equipment and building systems at the Properties operate smoothly. To that end, the Property Managers replaced and upgraded major outside service providers to support overall property management improvements;

c. <u>Pest Control</u>: newly engaged pest management companies have provided comprehensive solutions for all of the Properties including deployment of bait stations across the Properties, crack and crevice rodent powder treatments, and weekly site visits to treat all common areas, basements and yard areas for the Properties. Following installation of the new Property Managers and beginning March 2021 and continuing for approximately 12 months thereafter, all tenants at the Properties had the option of weekly exterminator service inside their individual apartment units. While monthly provision of extermination services to tenants is the normal practice for New York City apartment buildings, as of the date of this Complaint, tenants at the 117th Street Properties have the option of bimonthly exterminator services inside individual apartment units. Tenants at 210 West 107th Street continue to have the option of free weekly exterminator service and treatment while tenants at 203, 220, and 230 West 107th Street have the option of free bimonthly service.[12] This is an example of property management going above and beyond recognized standards to address any perceived issues from tenants.

d. <u>Boiler Service</u>: the Property Managers retained boiler repair and service companies shortly after they were installed to review all boiler equipment and the accessible components of all heating systems at the Properties to determine immediate maintenance needs. Substantial boiler repairs were undertaken at one or more of the Properties which include, but are not limited to, the: (i) repair and re-installation of mandatory safety features; (ii) installation of a backflow preventer at one Property; (iii) installation of a sump pump in the boiler room at one Property and replacement of failed sump pumps at other Properties; (iv) replacement of an

---

[12] The pest management companies employed by the Debtors can provide in-unit services only for apartments where the residing tenant requests such services and provides access. Very few tenants actually seek the service of the exterminator. Despite that fact, the Debtors have substantially removed pests from the Properties, including in the common areas. However, given the pest infestation currently present in New York City, it's possible tenants at the Properties may still on occasion notice pests in basements or around the perimeters of the Properties. *See, e.g.,* New York Post, NYC's Rat Problem is Out of Control-and It's Not Doing Enough to Stop It (June 1, 2022) at https://nypost.com/2022/06/01/nyc-has-a-major-rat-problem-and-its-not-doing-enough/; New York Times, N.Y.C. Rats: They're In the Park, On Your Block and Even at Your Table (Nov. 5, 2021) at https://www.nytimes.com/2021/11/05/nyregion/nyc-rats-sightings.html.

oversized chimney at one Property; (v) cleaning or replacement of failed/clogged piping throughout boiler systems for all of the Properties; (vi) repair of leaks in boiler and distribution piping at all of the Properties; (vii) replacement of a failed electronic boiler/burner control at one Property; (viii) significant boiler repairs at one Property, including gasket replacements, the correction of miswiring on a control panel, and installation of an exhaust smoke alarm; (ix) repair of a steam line leak at one Property; and (x) full replacement of a boiler at one Property; and

e.  <u>Extensive Building-Wide Maintenance and Cleanup</u>: the Property Managers also addressed numerous deferred maintenance issues in the Properties' common areas, basements, and yard areas. These include, but are not limited to, the: (i) removal of significant trash and debris at all of the Properties that had accumulated in the basements and yard areas; (ii) removal of a rooftop pigeon coop and dilapidated storage sheds in the rear yard at one of the Properties; (iii) cleaning and degreasing of trash chutes (where they exist) along with replacement of two trash compactors and repairs and upgrades to a third compactor; (iv) clearing of clogged storm drains and removal of significant standing/ponding water in the yard areas; (v) providing enhanced security features at the Properties including, but not limited to, replacement of a rear yard chain-link fence, replacement of a building's front door locking mechanism, and repairing vestibule door entrances; (vi) replacement of an automatic shutoff valve on the rooftop water tank at one Property to eliminate leakage and freezing; (vii) restoration of an entrance gate to a basement by welding the frame to the entrance; (viii) servicing a main sewer line at one Property to prevent backup; (ix) replacement of rusted steps to the basement at one Property; and (x) replacement of a main water line into a building.

35.  More specific to the 107th Street Properties, the Debtors and Tri-Hill have made the following improvements:

a.  <u>203 West 107th Street, New York, New York</u>: the Debtors and Tri-Hill: (i) repaired and made improvements to the water tower on the building's roof; (ii) repaired the roof to stop water leaks; (iii) installed elevator door locking mechanisms; (iv) sealed all openings and crevices around the perimeter of the building and along the foundation to prevent pests from entering the Property; and (v) made significant, in-unit repairs that include, but are not limited to, retiling bathrooms and scraping and painting unit walls;

b.  <u>210 West 107th Street, New York, New York</u>: the Debtors and Tri-Hill: (i) replaced the trash compactor and cleaned and sealed trash chutes; (ii) replaced the water main connection to the street, (iii) removed faded and decaying wallcovering and painted the lobby; (iv) repaired and painted all fire escapes; (v) overhauled the

boiler and converted the boiler from use of number 4 oil to number 2 oil to make the boiler run more efficiently; (vi) installed elevator door locking mechanisms; (vii) sealed all openings and crevices around the perimeter of the building and along the foundation walls to stop pests from infiltrating the Property; (viii) made significant in-unit repairs that include, but are not limited to, painting, installing replacement flooring and making other numerous repairs and improvements in many units; and (ix) inspected, repaired as necessary, and scraped and painted all fire escapes;

c. <u>220 West 107th Street, New York, New York</u>: the Debtors and Tri-Hill: (i) replaced the trash compactor and cleaned and sealed trash chutes; (ii) removed faded and decaying wallcovering and painted the lobby; (iii) repaired and painted all fire escapes; (iv) overhauled the boiler and converted the boiler from use of number 4 oil to number 2 oil to make the boiler run more efficiently;[13] (v) installed elevator door locking mechanisms; (vi) sealed all openings and crevices around the perimeter of the building and along the foundation to stop pests from infiltrating the Property; (vii) made significant in-unit repairs that include, but are not limited to, pipe replacement in the kitchens and bathrooms of many units and sealing and/or patching holes in the floors and walls at many units; and (viii) inspected, repaired as necessary, and scraped and painted all fire escapes; and

d. <u>230 West 107th Street, New York, New York</u>: the Debtors and Tri-Hill: (i) painted the lobby; (ii) scraped and painted all fire escapes; (iii) installed elevator door locking mechanisms; (iv) sealed all openings and crevices around the perimeter of the building and along the foundation walls to stop pests from infiltrating the Property; and (v) inspected, repaired as necessary, and scraped and painted all fire escapes;

36.    The Debtors' and Tri-Hill's efforts have proven successful. Conditions at the 107th Street Properties do not, in any way, justify the withholding of rents, nor have they since at least January 1, 2022, if not well before. As of May 26, 2022, the Debtors have removed 77.6% of all open HPD violations across the 107th Street Properties, i.e., 580 of a total of 747 open HPD violations have been corrected and removed. Of the remaining 167 open HPD violations, 64 have

---

[13] 210 and 220 West 107th Street share a common boiler, which is the reason this repair appears identically in paragraphs 35.b and 35.c.

been corrected, and the Debtors are awaiting HPD inspections to formally remove such violations from HPD's records.  Of the 103 open HPD violations remaining, 9 are currently being addressed and an additional 79 are insusceptible to remediation because the tenants have not provided reasonable access to the Debtors to undertake the repair or and/or for HPD to undertake an inspection to remove such violations from record.  Thus, only 15 open HPD violations remain outstanding at the 107th Street Properties which the Debtors can actually address given the access issues, none of which involve the Tenants who are participating in the Rent Strike.

37.    The substantial decrease in HPD violations at the 107th Street Properties is the result of the  Debtors' expenditures of $1.6 million and the Property Managers' diligence and commitment to remedying outstanding violation conditions and improving the quality of life for tenants.

38.    Close examination of the conditions in units occupied by the Current Tenants represented by KHGF warrants the conclusion that the Current Tenants' continued withholding of Monthly Rents, payment of such rents into the KHGF Accounts, and participation in the Rent Strike must cease immediately and be declared improper as of a date not later than January 1, 2022.

39.    The table below reflects the HPD violation status across the 107th Street Properties solely in units occupied by Current Tenants participating in the Rent Strike.  The Current Tenants occupy 48 apartments and there are presently 64 open HPD violations across such apartments. As the table makes clear, ***excluding the 10 apartments occupied by Current Tenants who consistently refuse to allow access to their apartments for repairs to be performed, there are no***

*open violations in any units occupied by Current Tenants that are susceptible to or require*

*remediation*.

| HPD Violation Status for Current Tenants Participating in the Rent Strike | Number of Violations in this Category For All of the 107th Street Properties[14] |
|---|---|
| Total Number of Open HPD Violations in 48 Units Occupied by Current Tenants | 64 |
| Total Number of Open HPD Violations in 48 Units Occupied by Current Tenants that Have Been Corrected and for Which the Debtors Are Awaiting Inspection from HPD to Remove Such Violations | 18 |
| Total Number of Open HPD Violations in 48 Units Occupied by Current Tenants that Have Been Corrected and for Which the Current Tenant Residing in Such Unit Has Not Provided Access to HPD for Re-Inspection to Remove Such Violations | 13 |
| **Net Violations Remaining in 48 Units Occupied by Current Tenants that Require Correction (the "Net Violations")** | 33 |
| Total Number of the Net Violations Which Are in the Process of Being Remediated | 0 |
| Total Number of the Net Violations Which Require Correction (the "Current Tenants' Remaining Violations") | 33 |
| **Total Number of the Current Tenants' Remaining Violations for Which Such Current Tenants Refuse to Provide Access for the Debtors to Make Necessary Repairs (10 apartments)** | 33 *i.e., **there are no open violations in any units occupied by Current Tenants*** |

---

[14] *See* Exhibit A to this Complaint which contains four (4) separate tables that reflect the number of violations in each category at each of the 107th Street Properties as of May 25, 2022 for the Current Tenants represented by KHGF.

| | ***that are susceptible to remediation***[15] |
|---|---|

40.     The Debtors' herculean efforts described above reflect the substantial progress made by the Debtors at the 107th Street Properties in the more than one-year period since the Petition Date.  Thus, the Current Tenants are unjustifiably and improperly participating in the Rent Strike and withholding Monthly Rents due to the Debtors.

### D.    The Tenants' Proofs of Claim

41.     Prior to the Tenant Bar Date, KHGF filed thirty-six (36) proofs of claim on behalf of tenants residing at the Properties, including but not limited to the Tenants. Six (6) tenant claims were settled pursuant to the Court's *Order Approving the Settlement of Certain Tenant Claims Filed by the Ad Hoc Group of West 107th Street Tenants* [ECF No. 127].  The thirty (30) remaining tenant claims (the "Tenant Claims") assert amounts of approximately $990,000 in the aggregate for, among other things, pre-petition attorneys' fees, contempt fines, rent overcharge, breach of the warranty of habitability, return of security deposits, and rent abatement.  Of the approximately $990,000 asserted in the Tenant Claims, not less than $516,641 is attributable to KHGF's prepetition attorneys' fees and expenses.[16]

---

[15] Certain of the Current Tenants continue to refuse to provide access to their units for the Debtors to make necessary repairs in an apparent effort to avoid paying the required Monthly Rents.

[16] KHGF has asserted legal fees in amounts that the Debtors believe are shockingly excessive and disproportionate. KHGF has asserted approximately $510,000 in prepetition legal fees together with not less than $450,000 in postpetition legal fees and claims that the Debtors are responsible for paying such amounts.  This nearly $1 million in legal fees stands in contrast to the Tenants' own claims which aggregate approximately $500,000.  And these fees are in addition to the not less than $30,548.32 already paid to KHGF through its improper disbursements to itself from the KHGF Accounts.  *See infra* ¶ 52.

21

42.     The substantial majority of the remaining amounts asserted in the Tenant Claims are for return of tenant security deposits and rent abatement, and such claims are addressed in the Plan and, to the extent allowed, will be treated accordingly. In short, the allowed portion of each Tenant Claim for rent abatement and return of security deposit will be paid or satisfied in full under the Plan. *See* Plan §§ 9.4 (addressing the treatment of claims arising under tenant leases); 9.5 (addressing the treatment of tenant security deposits).

**E.     The Debtors' Efforts to Resolve the Rent Strike and the Tenants' Proofs of Claim**

43.     Immediately after the Petition Date, on December 30, 2020, Debtors' counsel sent KHGF a letter wherein the Debtors informed KHGF that the Monthly Rents held in the KHGF Accounts were property of the Debtors' estates, subject to turnover pursuant to Bankruptcy Code section 542. In an effort to resolve the dispute, the Debtors proposed that the funds be maintained with a third party escrow agent.

44.     KHGF on behalf of itself and the Tenants refused to accept the Debtors' proposal. Despite this refusal, the Debtors forbore from pursuing remedies with respect to such Monthly Rents. Instead, the Debtors (successfully, as demonstrated above) focused their efforts on remediating conditions at the Properties, removing HPD violations, and generally improving the quality of life for all tenants.

45.     In the Fall of 2021, despite substantial repairs and remediation having been undertaken, KHGF (and its lead counsel, Mr. Douglas Kellner) claimed to be unsatisfied with the Debtors' efforts at the 107th Street Properties and suggested a joint tour of such properties with the Debtors, Tri-Hill, and certain tenants at the 107th Street Properties for Mr. Kellner and such

22

tenants to highlight any unsatisfactory conditions or outstanding repair issues.  The Debtors and

Tri-Hill then scheduled a tour of the 107th Street Properties for November 10, 2021 to provide

KHGF (and Mr. Kellner) and such tenants an opportunity to identify any unsatisfactory conditions

or outstanding repair issues.  Prior to the scheduled tour, on November 3, 2021, KHGF provided

the Debtors (through counsel) a list of all remaining conditions at the 107th Street Properties for

each of the Current Tenants that necessitated remediation (the "KHGF List").  Despite initially

suggesting and accepting the offer to tour the 107th Street Properties, neither Mr. Kellner nor any

representative from KHGF appeared at the agreed upon time for such tour and no follow-up visit

has been sought.[17]  Nonetheless, the Debtors immediately addressed the repairs listed on the KHGF

List.  As of December 15, 2021 (and in the majority of instances significantly sooner), the Debtors

and Tri-Hill (either themselves or through third-party contractors) had repaired all conditions

identified in the KHGF List, with exceptions solely for 10 apartments occupied by Current Tenants

each of whom denied and continues to deny reasonable access to their unit for the Debtors or Tri-

Hill to make repairs.

46.     Prior to December 15, 2021, the date conditions identified on the KHGF List were

substantially remediated, but premised upon the substantial remediation of such conditions, the

Debtors again attempted to engage KHGF in settlement discussions to resolve, among other things,

the Tenant Claims, the Current Tenants' withholding of Monthly Rents, and the Rent Strike.  From

---

[17] Despite KHGF's failure to appear for the tour, certain tenants at the 107th Street Properties attended the scheduled tour and such tenants identified several minor common area issues that they wanted the Debtors to address.  All such issues were repaired immediately, save one requested correction to provide tenants roof access (i.e., the Debtors did not accede to inappropriately providing the tenants with roof access).

the Debtors' perspective, the structure of the settlement would need to include: (i) an immediate end to the Rent Strike with Current Tenants resuming rent payments to the Debtors under the terms of their tenant leases, (ii) an agreed disposition of the Monthly Rents held in the KHGF Accounts, and (iii) the resolution of the Tenant Claims.

47.     Despite remediation of the conditions, the Debtors have been unable to advance their settlement discussions with KHGF and the Tenants or to otherwise end the Rent Strike.  The Debtors have repeatedly attempted to engage and re-engage KHGF with settlement proposals to resolve, among other things, the Rent Strike and the Tenant Claims.  Despite those efforts, the Debtors' settlement negotiations with KHGF are at an impasse.

48.     In comparison, since Spring 2021, the Debtors have worked cooperatively and successfully with the Tenants' Association to resolve nearly fifty (50) tenant claims that were filed and to timely address all open repairs existing in the units at the 117th Street Properties for such tenants.

### F.      The Rent Strike Inappropriately Continues

49.     There is no legitimate basis for the Rent Strike to continue.  The Properties have been remediated and are in good, habitable condition and have been in that condition for many months, and certainly not later than December 15, 2021 when the Debtors completed all of the items identified in the KHGF List (other than those limited items for which access was not provided).  The substantial majority of the 48 units (representing 59 Current Tenants) participating in the Rent Strike have no ongoing conditions or violations in their apartments.

50.     Two (2) Tenants' units have had no open HPD violations since January 1, 2019, 4 additional Tenants' units have had no open HPD violations since January 1, 2020, 3 additional Tenants' units have had no open HPD violations since January 1, 2021, and 10 additional Tenants' units have had no open violations since January 1, 2022.  Thus, as of at least January 1, 2022, 16 Tenants' units have had no open HPD violations.  Of the remaining 32 Tenants' units, 22 have open HPD violations that have been fully remediated and removed (or will be removed) following an HPD inspection.

51.     Thus, as of at least January 1, 2022, conditions at the Properties did not warrant the Current Tenants' withholding of rent.  Thus, the Rent Strike must immediately cease and be declared improper as of a date no later than January 1, 2022.

### G.     KHGF Improperly Released Monthly Rents from the KHGF Accounts

52.     Upon information and belief, at various times prior to the Petition Date, KHGF disbursed the Debtors' Monthly Rents to itself and Former Tenants without the Debtors' knowledge or consent and in violation of New York law.  Based on the Accountings provided to the Debtors, the table below identifies the improper, unauthorized *prepetition* transfers of Monthly Rents that KHGF effectuated to itself for legal fees (the "Improper Attorney Distributions") and to Former Tenants for return of Monthly Rents (the "Improper Tenant Distributions").

| Former Tenant that Paid into the KHGF Accounts | Disbursement Date | Amount Disbursed to the Former Tenant | Amount Disbursed to KHGF for Legal Fees |
|---|---|---|---|
| Skye Morgan | September 30, 2020 | $3,400.00 | $1,700 |

| | | | |
|---|---|---|---|
| Joyce Culver | November 13, 2020 | $11,741.87 | $5,870.93 |
| Jessica Grey | November 15, 2019 | $10,666.67 | $5,333.33 |
| Christopher Tillotson | November 20, 2019 | $7,600.00 | $2,550.00 |
| Kidest Fikremariam | October 14, 2020 | $8,016.67 | $4,008.33 |
| Ron Peralta | October 14, 2020 | $6,554.79 | $3,277.39 |
| Molly Russo | October 14, 2020 | $7,600.00 | $3,800.00 |
| | | Total Monies KHGF Disbursed to Former Tenants: Not less than $55,580.00 | Total Monies KHGF Disbursed to Itself: Not less than $26,539.98 |
| **Total Monies KHGF Disbursed Prepetition from the KHGF Accounts: Not Less Than $82,119.98** | | | |

53.     Upon information and belief, in addition to those improper, unauthorized distributions referenced in the table above, KHGF made additional, unauthorized ***prepetition*** Improper Attorney Distributions and Improper Tenant Distributions

54.     Upon information and belief, KHGF also made additional, unauthorized ***postpetition*** Improper Attorney Distributions and Improper Tenant Distributions in violation of the Bankruptcy Code's automatic stay.

55.     For example, the May 11, 2021 Accounting shows, among other things, a $35,932.12 balance in the KHGF Accounts on behalf of Mark Setlock as of April 21, 2021.  The November 11, 2021 Accounting contains no reference to, or balance in the KHGF Accounts for, Mark Setlock.  Upon information and belief, without Court approval (or even any  notice to the Court), KHGF disbursed Mark Setlock's $35,932.12 balance held in the KHGF Accounts postpetition to Mark Setlock and/or KHGF.

56.     As a further example, the November 11, 2021 Accounting shows, among other things, a $58,412..32 balance in the KHGF Account on behalf of Mark Mravic as of November 19, 2020.  The June 9, 2022 Accounting contains no reference to, or balance in the KHGF Accounts for, Mark Mravic.  Upon information and belief, without Court approval (or even notice to the Court), KHGF disbursed Mark Mravic's $58,412.32 balance held in the KHGF Accounts postpetition to Mark Mravic and/or KHGF.

### FIRST CLAIM FOR RELIEF
**(Turnover of the Monthly Rents Pursuant to 11 U.S.C. §§ 542(a) and (b))**
**Solely Against KHGF**

57.     The Debtors repeat and reallege the allegations in each of the foregoing paragraphs as though fully set forth herein.

58.     KHGF collected Monthly Rents from the Tenants prior to, on, and after the Petition Date.

59.     KHGF failed to pay the Monthly Rents to the Debtors prior to, on, or after the Petition Date.

60.    Following the Petition Date, the Debtors made demand for turnover of the Monthly Rents and KHGF failed to turnover such Monthly Rents.

61.    The Monthly Rents are property of the Debtors' estates that the Debtors may use under section 363 of the Bankruptcy Code.

62.    The Tenants owe past rent to the Debtors in an amount not less than the Monthly Rents.

63.    The Debtors are entitled to recover the Monthly Rents collected by KHGF on behalf of the Tenants, or any other tenants residing at the Properties, through the date judgment is entered on this Complaint and KHGF is obligated to turnover all such Monthly Rents to the Debtors.

### SECOND CLAIM FOR RELIEF
**(Authorization to Use Cash Collateral)**
**Against KHGF and the Tenants**

64.    The Debtors repeat and reallege the allegations in each of the foregoing paragraphs as though fully set forth herein.

65.    To the extent that KHGF or the Tenants have an interest in the Monthly Rents, such monies constitute Cash Collateral (as defined in Bankruptcy Code section 363) which the Debtors may use with Court approval and a determination that KHGF and the Tenants are adequately protected.

66.    KHGF has unjustifiably refused to consent to the Debtors' use of all or a portion of the Monthly Rents, i.e., the Cash Collateral, for the operation and improvement of the Properties and the tenants residing therein.

67.     The Debtors require use of at least 50% of the Monthly Rents collected through and including December 31, 2021 and one-hundred percent (100%) of the Monthly Rents collected from and after January 1, 2022 for the operation and improvement of the Properties and the tenants residing therein.

68.     The Debtors request authority to use up to fifty percent (50%) of the Monthly Rents, i.e., the Cash Collateral, collected through and including December 31, 2021 and one-hundred percent (100%) of the Monthly Rents collected from and after January 1, 2022 for the operation and improvement of the Properties and the tenants residing therein.

69.     KHGF and the Tenants, who themselves will benefit from the enhancements to the Properties, are adequately protected by their claims against the Debtors including the contemplated treatment of their claims under the Plan together with the unused portion of the Monthly Rents which substantially exceeds the amount of any conceivable abatement claims that the Tenants may have.

### **THIRD CLAIM FOR RELIEF**
**(Turnover of the Improper Attorney Distributions Pursuant to 11 U.S.C. §§ 542(a) and (b))**
**Solely Against KHGF**

70.     The Debtors repeat and reallege the allegations in each of the foregoing paragraphs as though fully set forth herein.

71.     KHGF collected Monthly Rents from the Tenants prior to, on, and after the Petition Date.

72.     KHGF made Improper Attorney Distributions from the Monthly Rents prior to, on, and after the Petition Date.

29

73.     Following the Petition Date, the Debtors made demand for turnover of the Monthly

Rents, including the Improper Attorney Distributions, and KHGF failed to turnover the Improper

Attorney Distributions.

74.     The Improper Attorney Distributions made from the Monthly Rents are property of

the Debtors' estates that the Debtors may use under section 363 of the Bankruptcy Code.

75.     The Tenants owe past rent to the Debtors in an amount not less than the Monthly

Rents..

76.     The Debtors are entitled to recover the Improper Attorney Distributions disbursed

by KHGF to itself for legal fees and KHGF is obligated to turnover all such Improper Attorney

Distributions to the Debtors.

### FOURTH CLAIM FOR RELIEF
**(Turnover of the Improper Tenant Distributions Pursuant to 11 U.S.C. § 542(a) and (b))**
**Solely Against Certain Former Tenants**

77.     The Debtors repeat and reallege the allegations in each of the foregoing paragraphs

as though fully set forth herein.

78.     KHGF collected Monthly Rents from the Tenants prior to, on, and after the Petition

Date.

79.     KHGF made Improper Tenant Distributions to certain Former Tenants from the

Rent Strike Monies prior to, on, and after the Petition Date, including Skye Morgan, Joyce Culver,

Jessica Grey, Christopher Tillotson, Kidest Fikremariam, Ron Peralta, and Molly Russo.

80.     Following the Petition Date, the Debtors made demand for turnover of the Monthly Rents, including the Improper Tenants Distributions, and such Former Tenants failed to turnover the Improper Tenant Distributions.

81.     The Improper Tenant Distributions made from the Monthly Rents are property of the Debtors' estates that the Debtors may use under section 363 of the Bankruptcy Code.

82.     Such Former Tenants owe past rent to the Debtors in an amount not less than the Monthly Rents.

83.     The Debtors are entitled to recover the Improper Tenant Distributions disbursed by KHGF to such Former Tenants for return of Rent of Strike Monies paid into the KHGF Accounts and such Former Tenants are obligated to turnover all such Improper Tenant Distributions to the Debtors.

## FIFTH CLAIM FOR RELIEF
**(Sanctions for KHGF's Willful Violations of the Automatic Stay
Imposed Pursuant to 11 U.S.C. § 362)
Solely Against KHGF**

84.     The Debtors repeat and reallege the allegations in each of the foregoing paragraphs as though fully set forth herein.

85.     Pursuant to Bankruptcy Code section 541, the Monthly Rents held in the KHGF Accounts and the Improper Attorney Distributions and Improper Tenant Distributions made therefrom constitute property of the Debtors' bankruptcy estates.

86.     Pursuant to Bankruptcy Code section 362(a)(3), the Improper Attorney Distributions and Improper Tenant Distributions that KHGF effectuated postpetition constitute

acts to exercise possession and/or control over estate property and are therefore violations of the automatic stay.

87.     After actual knowledge of the Debtors' bankruptcies, KHGF willfully violated the automatic stay by (i) causing the Improper Attorney Distributions to be paid to itself from the KHGF Accounts, and (iii) causing the Improper Tenant Distributions to be paid to certain Former Tenants from the KHGF Accounts.

88.     The Debtors are entitled to a determination that KHGF's postpetition exercise of possession and/or control over estate property by effectuating the Improper Attorney Distributions and the Improper Tenant Distributions from the Monthly Rents held in the KHGF Accounts constitutes a willful violation, and a continuing willful violation, of the automatic stay.

89.     Additionally, to the extent allowable under applicable law, the Debtors request that the Court sanction KHGF by awarding reasonable attorneys' fees and costs, prejudgment interest accruing from the date of filing this Complaint, and post judgment interest as a result of KHGF's willful violations of the automatic stay.

## SIXTH CLAIM FOR RELIEF
### (Declaratory Judgment that the Rent Strike is Improper as of a Date No Later Than January 1, 2022  Pursuant to 28 U.S.C. § 2201) Solely Against Current Tenants

90.     The Debtors repeat and reallege the allegations in each of the foregoing paragraphs as though fully set forth herein.

91.     Pursuant to 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or

could be sought." 28 U.S.C. § 2201(a). Bankruptcy courts, as units of the district court, have the authority to issue declaratory judgments.

92.     Courts possess jurisdiction to issue declaratory relief where the facts alleged under all the circumstances, show that there is a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgement.

93.     There is a substantial controversy between the Debtors and Current Tenants of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, which is both necessary and appropriate.

94.     An actual controversy exists pursuant to 28 U.S.C. § 2201 with respect to the Rent Strike because, among other reasons, as of at least January 1, 2022, conditions at the Properties did not warrant the Current Tenants' withholding of rent. Thus, the Rent Strike must immediately cease and be declared improper as of a date no later than January 1, 2022.[18]

95.     Current Tenants' rent obligations to the Debtors from at least January 1, 2022 due and owing under the Current Tenants' applicable lease are property of the Debtors' estates subject to turnover under Bankruptcy Code section 542(b).

96.     For these reasons, the Court should declare that (i) the Rent Strike by Current Tenants is improper as of a date no later than January 1, 2022, (ii) Current Tenants' rents as of a date no later than January 1, 2022 are due and payable to the Debtors, and (iii) Current Tenants'

---

[18] The Debtors reserve the right to seek a determination that rent is due and owing by a Tenant in whole or in part from a date sooner than January 1, 2022 based on the conditions in such Tenant's unit and the applicable Properties.

rents as of a date no later than January 1, 2022 are property of the Debtors' estates subject to turnover under Bankruptcy Code section 542(b).

## SEVENTH CLAIM FOR RELIEF
### (Accounting Pursuant to 11 U.S.C. § 105(a))
### Solely Against KHGF

97.     The Debtors repeat and reallege the allegations in each of the foregoing paragraphs as though fully set forth herein.

98.     KHGF has not fully accounted to the Debtors for, among other things, all (i) Monthly Rents collected from the Tenants (or any other tenants that purportedly reside or resided at the Properties), (ii) Improper Attorney Distributions, (iii) Improper Tenant Distributions, or (iv) any other deposits into or disbursements from the KHGF Accounts since the Rent Strike began.

99.     Upon information and belief, KHGF maintains books and records recording (i) Monthly Rents collected from the Tenants (or any other tenants that purportedly reside or resided at the Properties), (ii) Improper Attorney Distributions, (iii) Improper Tenant Distributions, and (iv) any other deposits into or disbursements from the KHGF Accounts since the Rent Strike began.

100.    KHGF's wrongful acts and omissions with respect to, among other things, the Monthly Rents, Improper Attorney Distributions, and Improper Tenant Distributions have injured and damaged the Debtors.  Accordingly, the Debtors demand the equitable remedy of accounting.

## CONCLUSION

WHEREFORE, the Debtors request entry of judgment against KHGF and the Tenants, as applicable, that, among other things, (a) compels KHGF to turnover the Monthly Rents held in the

34

KHGF Accounts to the Debtors, subject to and without prejudice to the rights and interests of the Tenants in such monies, (b) authorizes the Debtors to use up to fifty percent (50%) of the Monthly Rents collected through and including December 31, 2021 and one-hundred percent (100%) of the Monthly Rents collected from and after January 1, 2022 as cash collateral in accordance with the Cash Collateral Budget, subject to a determination that the Tenants' interests are adequately protected, (c) compels KHGF to turnover the Improper Attorney Distributions to the Debtors, subject to and without prejudice to the rights and interests of KHGF in such monies, (d) compels Tenants to turnover the Improper Tenant Distributions to the Debtors, subject to and without prejudice to the rights and interests of the Tenants in such monies, (e) holds KHGF in contempt for its willful violations of the automatic stay imposed pursuant to Bankruptcy Code section 362; (f) declares that the Rent Strike is improper and unlawful as of a date no later than January 1, 2022 and that all rent  obligations of the Tenants to the Debtors are due and owing as of a date no later than January 1, 2022, and (g) directs KHGF to provide an immediate accounting of all Monthly Rents received from Tenants and disbursed from the KHGF Accounts since the Rent Strike began.

Dated: New York, New York
        July 1, 2022

By: *s/Mark Frankel*
Backenroth Frankel & Krinsky LLP
800 Third Avenue
New York, New York 10022
(212) 593-1100

*Counsel to the Debtors and Debtors-in-Possession*

**Exhibit A**

| HPD Violation Status for Current Tenants Participating in the Rent Strike | Number of Violations in this Category For 203 West 107th Street |
|---|---|
| Total Number of Open HPD Violations in Units Occupied by Current Tenants | 20 |
| Total Number of Open HPD Violations in Units Occupied by Current Tenants that Have Been Corrected and for Which the Debtors Are Awaiting Inspection from HPD to Remove Such Violations | 4 |
| Total Number of Open HPD Violations in Units Occupied by Current Tenants that Have Been Corrected and for Which the Current Tenant Residing in Such Unit Has Not Provided Access to HPD for Re-Inspection to Remove Such Violations | 0 |
| **Net Violations Remaining in Units Occupied by Current Tenants that Require Correction (the "Net Violations")** | 16 |
| Total Number of the Net Violations Which Are in the Process of Being Remediated | 0 |
| Total Number of the Net Violations Which Require Correction (the "Current Tenants' Remaining Violations") | 16 |
| **Total Number of the Current Tenants' Remaining Violations for Which Such Current Tenants Refuse to Provide Access for the Debtors to Make Necessary Repairs** | 16, i.e., *there are no open violations in any units at 203 West 107th Street which are occupied by Current Tenants that are susceptible to remediation* |

| HPD Violation Status for Current Tenants Participating in the Rent Strike | Number of Violations in this Category For 210 West 107th Street |
|---|---|
| Total Number of Open HPD Violations in Units Occupied by Current Tenants | 11 |
| Total Number of Open HPD Violations in Units Occupied by Current Tenants that Have Been Corrected and for Which the Debtors Are Awaiting Inspection from HPD to Remove Such Violations | 9 |
| Total Number of Open HPD Violations in Units Occupied by Current Tenants that Have Been Corrected and for Which the Current Tenant Residing in Such Unit Has Not Provided Access to HPD for Re-Inspection to Remove Such Violations | 0 |
| **Net Violations Remaining in Units Occupied by Current Tenants that Require Correction (the "Net Violations")** | 2 |
| Total Number of the Net Violations Which Are in the Process of Being Remediated | 0 |
| Total Number of the Net Violations Which Require Correction (the "Current Tenants' Remaining Violations") | 2 |
| **Total Number of the Current Tenants' Remaining Violations for Which Such Current Tenants Refuse to Provide Access for the Debtors to Make Necessary Repairs** | 2, i.e., *there are no open violations in any units at 210 West 107th Street which are occupied by Current Tenants that are susceptible to remediation* |

2

| HPD Violation Status for Current Tenants Participating in the Rent Strike | Number of Violations in this Category For 220 West 107th Street |
|---|---|
| Total Number of Open HPD Violations in Units Occupied by Current Tenants | 27 |
| Total Number of Open HPD Violations in Units Occupied by Current Tenants that Have Been Corrected and for Which the Debtors Are Awaiting Inspection from HPD to Remove Such Violations | 5 |
| Total Number of Open HPD Violations in Units Occupied by Current Tenants that Have Been Corrected and for Which the Current Tenant Residing in Such Unit Has Not Provided Access to HPD for Re-Inspection to Remove Such Violations | 10 |
| **Net Violations Remaining in Units Occupied by Current Tenants that Require Correction (the "Net Violations")** | 12 |
| Total Number of the Net Violations Which Are in the Process of Being Remediated | 0 |
| Total Number of the Net Violations Which Require Correction (the "Current Tenants' Remaining Violations") | 12 |
| **Total Number of the Current Tenants' Remaining Violations for Which Such Current Tenants Refuse to Provide Access for the Debtors to Make Necessary Repairs** | 12, i.e., *there are no open violations in any units at 220 West 107th Street which are occupied by Current Tenants that are susceptible to remediation* |

3

| HPD Violation Status for Current Tenants Participating in the Rent Strike | Number of Violations in this Category For 230 West 107th Street |
|---|---|
| Total Number of Open HPD Violations in Units Occupied by Current Tenants | 6 |
| Total Number of Open HPD Violations in Units Occupied by Current Tenants that Have Been Corrected and for Which the Debtors Are Awaiting Inspection from HPD to Remove Such Violations | 0 |
| Total Number of Open HPD Violations in Units Occupied by Current Tenants that Have Been Corrected and for Which the Current Tenant Residing in Such Unit Has Not Provided Access to HPD for Re-Inspection to Remove Such Violations | 3 |
| **Net Violations Remaining in Units Occupied by Current Tenants that Require Correction (the "Net Violations")** | 3 |
| Total Number of the Net Violations Which Are in the Process of Being Remediated | 0 |
| Total Number of the Net Violations Which Require Correction (the "Current Tenants' Remaining Violations") | 3 |
| **Total Number of the Current Tenants' Remaining Violations for Which Such Current Tenants Refuse to Provide Access for the Debtors to Make Necessary Repairs** | 3, i.e., *there are no open violations in any units at 230 West 107th Street which are occupied by Current Tenants that are susceptible to remediation* |

4

| | |
|---|---|

5

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x
In re:

      203 W 107 Street LLC, *et al*,[19]

               Debtors.

-------------------------------------------------------- x
203 W 107 Street LLC, *et al*,

               Plaintiffs

v.

Kellner Herlihy Getty & Friedman LLP,
Julia Quintana, Jeffrey Dobbs John O'Grady,
Teresa Richards, Jhona Huntington, Avra
Matsoukas, Philip Feil, Kelly Irwin, Hana
Marritz, Leslie Goff, Katherine Marcus, Irma
Laguerre, Uday Dhar, Barbra Friedland, Josiah
Gluck, Suzzan Craig, Susan Graham, Ronald
Saleh, Wilawn Saleh, Barbra Swing, George
Rubey, Joshua Raskin, Karen Elizabeth Dugan
Raskin, Nancy Lange, Kathryn Frey, Jim Rush,
Nora Valencia, Patricia Tompkins, Boylston
Tompkins, Anna Smith, Amanda Levine, Andrew
Goltz, Carole Rosen, Francis Potash, George
Schirmann, Angela Pistilli, Diane Zinn, Beverley
Shenkman, Douglas Bellito, Marlaine Wade,
Gerard Caraccioli, Kelly Burchill, Joseph
Vattakkaven, Marie Grace, David Johnston,
Danilo Costa, Peter Wargo, Margaret Wargo, Jill
Cooper, Rena Miller Devenza, Sally Wilfert,
Roger Howell, Daniel Leaf, Erica Ackerberg,
Robert Bird, Howard Stoodard, Margaret Daly,
Jose Alfonso, Luz Laureano, Alyssa Goodpaster,
Kathryn Goodpaster, Hira Ismail, Mark Mravic,
Kidest Fikremariam, Ron Peralta, Molly Russo,
Nobuhiro Arai, Joanna Barrett, Ann Gollin, Skye
Morgan, Arthur Noguera, Francis Allarey, Mark
Setlock, Kira Arnold, John DeFrance,, Joyce

Chapter 11
Case No. 20-12960 (LGB)
Jointly Administered

Adv. Proc. No. 22-_____ (___)

---

[19] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: 203 W 107 Street LLC (8429), 210 W 107 Street LLC (3364), 220 W 107 Street LLC (0461), 230 W 107 Street LLC (3686), 124-136 East 117 LLC (6631), 215 East 117 LLC (6961), 231 East 117 LLC (0105), 235 East 117 LLC (8762), 244 East 117 LLC (1142), East 117 Realty LLC (1721) and 1661 PA Realty LLC (5280).

Culver, Jessica Grey, Christopher Tillotson, and
John or Jane Does 1-10,

                          Defendants.

----------------------------------------------------------- x

## **VERIFICATION**

I, Ephraim Diamond, declare the following under penalty of perjury:

      1.      I am the Chief Restructuring Officer for the above-captioned debtors.  I am fully familiar with all matters asserted herein based upon my personal knowledge.

      2.      I have reviewed the annexed pleading and the facts contained therein are true and correct to the best of my knowledge, information, and belief.

Dated: New York, New York
      July 1, 2022

                              _s/ Ephraim Diamond_____
                              Ephraim Diamond